SNOW et al. v. DALTON et al.

In re EAGLE FURNITURE CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1913.)

No. 1,095.

1. BANKRUPTCY (§ 440*)—PROCEEDINGS—MODE OF REVIEW—"CONTROVERSY ARISING IN BANKRUPTCY PROCEEDINGS"—"PROCEEDINGS IN BANKRUPTCY."

The term "controversy arising in bankruptcy proceedings," within Bankr. Act July 1, 1898, c. 541 § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), providing for review of orders therein on appeal, is limited to cases where third parties claim not in and under the administration of the bankrupt's estate in bankruptcy, but assert some right hostile to the title of trustee, or against the right of the court to administer the particular estate in the bankruptcy case, and hence did not include an order determining the rights of creditors to participate in the proceeds of admittedly valid security, which was a "proceeding in bankruptcy," reviewable by petition to superintend and revise, under section 24b.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec Dig. § 410.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CORPORATIONS (§ 470*)—BONDS—ISSUANCE—DEBT SECURED.

A bankrupt corporation being largely indebted, a resolution of the directors was passed for the issuance of $50,000 in bonds, secured by a deed of trust, to be held subject to the order of petitioners and R., who were indorsers on various notes of the corporation, and that, in case petitioners and R. at any time should have to pay any money on account of such indorsements, it was ordered that the bonds should be delivered to them to indemnify and save them harmless on such indorsements. Before the bonds were issued, R., who had been manager of the corporation, had borrowed $28,000 from a trust company on his own indorsement, and some $17,500 on notes given to other parties which he had similarly indorsed; he securing the joint indorsement of the petitioners to the notes given to the trust company by concealing the other indebtedness. Held, that the resolution providing for the issuance of the bonds limited the security thereof to the notes bearing the joint indorsement of the petitioners and R., and hence, on the bankruptcy of the corporation, R. was not entitled to share in such security for the benefit of the additional indebtedness secured only by his individual indorsement.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 470.*]

Petition for Revision of Proceedings of the District Court of the United States for the Western District of North Carolina; James E. Boyd, Judge.

In the matter of bankruptcy proceedings of the Eagle Furniture Company and another. On petition by E. A. Snow and others to superintend and revise in matter of law proceedings of the District Court confirming a referee's order entitling W. H. Ragan to participate in certain securities for indebtedness of the bankrupt corporation. Reversed and remanded.

E. J. Justice, of Greensboro, N. C. (Justice & Broadhurst, of Greensboro, N. C., on the brief), for petitioners.

R. C. Strudwick, of Greensboro, N. C. (William P. Bynum, of Greensboro, N. C., on the brief), for respondents.

Before GOFF and PRITCHARD, Circuit Judges, and KELLER, District Judge.

KELLER, District Judge. [1] The first question to be determined arises upon a motion by respondents to dismiss the petition because:

"(1) That it appears upon the face of the said petition, and of the papers and exhibits attached thereto, that the case presented by this petition and record is not a proceeding of said District Court in bankruptcy, which this court is given power and authority to superintend and revise in matter of law, within the true intent and meaning of section 24b of the Bankruptcy Act of July 1, 1898 (30 Stat. 553, c. 541 [U. S. Comp. St. 1901, p. 3432]).

"(2) That it appears upon the face of such petition and record that the case presented thereby is a controversy arising in a bankruptcy proceeding within the true intent and meaning of section 24a of said Bankruptcy Act of July, 1898, and is therefore one which is reviewable by this court only by appeal, and not by petition to superintend and revise."

While we have given respectful consideration to the contentions of respondents' counsel upon this point, we are not impressed with the appositeness of the citations of authorities in the brief to the facts in this case. It seems to us that the order sought to be reviewed is really nothing more than the allowance to provable debts of the right to participate in the proceeds of certain security, and these debts having been proved in the bankruptcy proceeding proper, and the proceeds of the securities being in the bankruptcy court for administration, the apportionment of this fund is strictly and properly a part of the bankruptcy proceedings, and in no proper sense can be called a "controversy arising in bankruptcy proceedings."

We think that the latter phrase, as used in the Bankruptcy Act, must be limited to cases where third parties claim not *in and under* the administration of the bankrupt's estate in bankruptcy, but, on the contrary, assert some right hostile to the title of the trustee or going to the right of the court to administer the particular estate in the bankruptcy case. The following authorities seem directly in point:

"Where it becomes necessary as incident to a step in bankruptcy, to determine the title or interest of third parties who may be brought in for that purpose, it is not a controversy arising in bankruptcy, but continues to be a proceeding in bankruptcy proper." Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; In re McMahon, 147 Fed. 685, 77 C. C. A. 668; Loveland on Bankruptcy (last Ed.) p. 1454; Morgan v. First Nat. Bank (C. C. A. 4th Cir.) 145 Fed. 466, 76 C. C. A. 236.

"Such is * * * where a creditor proves his claim asserting a security for his debt, or where, in determining the priority of claims, the validity of a trust deed is drawn in question, the debt not being disputed." Loveland, p. 1454, and cases there cited; Coder v. Arts; supra. See, also, Remington, vol. 3, p. 805, and cases there cited.

"An order allowing or denying priority to a security claimed has been reviewed on petition as to matter of law." Courier-Journal Job Printing Co. v. Schaeffer-Meyer Brewing Co. (C. C. A. 6 Cir.) 101 Fed. 699, 41 C. C. A. 614; In re Rouse, Hazard & Co. (C. C. A. 7 Cir.) 91 Fed. 96, 33 C. C. A. 356; In re Richards (C. C. A. 7 Cir.) 96 Fed. 935, 37 C. C. A. 634.

And an appeal for this purpose has been dismissed. Gaudette v. Graham (C. C. A. 9 Cir.) 164 Fed. 311, 90 C. C. A. 243.

In Thompson et al. v. Mauzy, 174 Fed. 614, 98 C. C. A. 457, this court stated the following conclusions, which we regard as correct and

as determinative of the proper classification of the order sought to be reviewed:

"There is a clear distinction between 'controversies arising in bankruptcy proceedings,' as mentioned in section 24a, and the 'proceedings in bankruptcy,' which by section 24b the Circuit Courts of Appeals are given jurisdiction to superintend and revise in matter of law; for the former being generally held to embrace questions between the trustee, representing the bankrupt and his creditors, on the one side, and adverse claimants, on the other, and not directly affecting those administrative orders and judgments ordinarily known as 'proceedings in bankruptcy,' and the latter being confined to those questions arising between the bankrupt and his creditors, which are the very subject of such administrative orders and judgments, from the petition for adjudication to the discharge, and including the intermediate administrative steps and *such controversies as arise between parties to the bankruptcy proceedings as are involved in the allowance of claims, fixing their priorities,* sales, allowances, and other matters to be disposed of summarily."

This is the case of a dispute between parties to the bankruptcy proceedings as to their respective rights to participate in the proceeds of an admittedly valid security, and we hold belongs in the category of "proceedings in bankruptcy."

[2] Coming, now, to the case on its merits, the material facts appear to be as follows:

The Eagle Furniture Company, a corporation, and the bankrupt in this case, was organized by some gentlemen of High Point, N. C., for the manufacture of furniture, some years prior to the transactions hereinafter to be detailed, and appears to have conducted a fairly successful business up to the year 1905, when its property, or a portion thereof, was destroyed by fire. Mr. W. H. Ragan, one of the incorporators, was the active manager of the concern for a time, and was succeeded by his son, Charles Ragan, and according to the testimony in the case Mr. W. H. Ragan, after retiring from the active management, was still the adviser of the management on behalf of the directors of the company, of whom he was one. It appears that prior to the year 1907 the company had borrowed money from various sources, and notes, in the name of the company, were made for these loans, and were indorsed by W. H. Ragan individually. In the summer of 1907, according to the undisputed testimony of the petitioners, Mr. Ragan came to his fellow directors, E. A. Snow, J. E. Kirkman, and J. H. Millis, and said to them that he had borrowed a considerable amount of money from the Wachovia Loan & Trust Company, upon which he was sole indorser, and he did not think it was fair and right that he should be indorser alone on these notes, and asked the other directors to jointly indorse these notes at the bank with him. That he was asked by the other directors to give them a statement of the indebtedness of the concern, especially to the Wachovia Loan & Trust Company, which was pushing for some payments of notes, or better indorsement. That Mr. Ragan represented to the other directors that the concern owed in the neighborhood of $28,000, and that, if it could borrow some $5,000 additional money, he thought the concern could go on successfully. That the said directors refused to indorse these notes without some security, and thereupon the plan was suggested that the company issue $50,000 worth of bonds, secured by deed of

trust on the concern, and put them up as collateral to secure the joint indorsement of the directors. That such deed of trust and bonds were thereupon duly authorized and executed, and the bonds were placed in the custody of the Wachovia Loan & Trust Company, under a resolution of the board of directors of the Eagle Furniture Company, passed on the 18th day of July, 1907, and which resolution and direction to the trustee are in the words and figures following:

"High Point, N. C., July 18, 1907.

"Mr. C. L. Glenn, Trustee, City—My Dear Sir: At a meeting of the board of directors of the Eagle Furniture Company, held in the office of the Snow Lumber Company on this date, a majority being present, the following resolution was introduced by R. F. Dalton and seconded by F. M. Pickett, which was unanimously carried and ordered to be recorded:

"'It is ordered by the board of directors of the Eagle Furniture Company that the $50,000 in bonds issued by the order of the stockholders on the recommendation of the board of directors, for which a deed of trust was made and recorded, be placed in the vaults of the Wachovia Loan & Trust Company, at High Point, N. C., and held subject to the order of J. H. Millis, E. A. Snow, J. E. Kirkman, and W. H. Ragan, who are indorsers on various notes of the Eagle Furniture Company; and, should the said J. H. Millis, E. A. Snow, J. E. Kirkman, and W. H. Ragan at any time have to pay any money on account of the said indorsements, we hereby order and direct that the said bonds, or a sufficient number of them, be turned over to them to indemnify and save them harmless on said indorsements. And we hereby instruct and direct the cashier of the Wachovia Loan & Trust Company, of High Point, N. C., to deliver bonds to them on their demand, in case they shall at any time be called on to pay on account of said indorsements.'

"These bonds are herewith delivered to you, and are in the denomination of $1,000 each, numbers 1 to 50, inclusive.

"Eagle Furniture Company,
"By E. A. Snow, President.

"T. H. Spencer, Secretary and Treasurer."

From the uncontradicted testimony in the record, it appears that Mr. Ragan, at the time he secured the indorsements of his fellow directors upon notes given to the Wachovia Loan & Trust Company to the amount of $33,500 (which included $5,000 of a new loan), did not disclose to them that there was any additional indebtedness of the company to other creditors, upon which he (Mr. Ragan) was sole indorser, and they had no such knowledge until long thereafter. These indorsers testify that their indorsement was secured by reason of the representation made by Mr. Ragan, and that they would not have indorsed this paper with the understanding that there was additional indebtedness, which was to participate in the security afforded by the lodgment of these bonds. It appears from the petition of W. H. Ragan that, at the time this joint indorsement was made, said Ragan was also indorser individually for the Eagle Furniture Company upon sundry notes held by parties other than the Wachovia Loan & Trust Company to the extent of $17,200, and that since that time payments were made out of the assets of the company, which reduced this indebtedness to the sum of $13,500.

The petition of Ragan was filed for the purpose of having the referee direct that he be permitted to share upon his individual indorsement in the security afforded by the bonds and mortgage, along with the joint indorsers upon the notes due the Wachovia Loan & Trust

Company. The referee sustained the petition of said Ragan, and entered an order directing the trustee, after paying the costs and expenses of the bankruptcy proceeding, and all debts which have by law priority over those secured by the deed of trust, to apply the assets remaining in his hands to the satisfaction or the discharge of the notes of the bankrupt corporation indorsed by J. H. Millis, E. A. Snow, J. E. Kirkman, and W. H. Ragan, held by the Wachovia Loan & Trust Company, together and pro rata with the notes of the Greensboro National Bank, the Wachovia National Bank, the American National Bank of Wilmington, the Bank of Lexington, and C. A. Kime, which are indorsed by W. H. Ragan alone. This order, upon petition for review, filed by the petitioners herein, was affirmed by the District Judge, by an order entered on the 6th day of January, 1912; and petitioners have had recourse to the present proceeding to revise and superintend in matter of law the said order of January 6, 1912.

Several points are insisted upon by petitioners as determinative of their right to be preferred in the distribution of the proceeds of the property conveyed by the deed of trust, the first of which is that the resolution of the board of directors of July 18, 1907, is not susceptible of any other interpretation than one which limits the security of the bonds to notes jointly indorsed by J. H. Millis, E. A. Snow, J. E. Kirkman, and W. H. Ragan. It is sufficient to say that we sustain this contention, and are entirely confident that the resolution, in its entirety, is susceptible of no other construction than that these bonds were placed in the custody of the cashier of the Wachovia Loan & Trust Company for the purpose, and the sole purpose of protecting the joint indorsement of these four gentlemen, and the provision for the delivery to them of bonds in the event of their having to pay money on account of said indorsement can also only be construed as authorizing the said cashier to make delivery of the bonds on their joint demand.

The petitioners further insist that, under the evidence in this case, W. H. Ragan is estopped from asserting a right to participate in this security, by reason of the representation made by him to his fellow directors at the time he secured their indorsement upon these notes. At that time the condition was that, with the exception of the $5,000 of new money borrowed from the Wachovia Loan & Trust Company, W. H. Ragan by his own act was indorser on $28,000 worth of notes, held by said Loan & Trust Company, and $17,200 of notes held by other parties. In view of his concealment of the existence of these other notes, upon which he was indorser individually, it would seem that, were it necessary, the doctrine of estoppel might be invoked to prevent him from taking an unfair advantage of the parties who, at his solicitation, and in reliance upon facts asserted by him to be true, had placed their names as indorsers upon the paper of the company. It appears that the only reduction in the indebtedness made, after the issuance of these bonds, was made solely upon notes indorsed individually by W. H. Ragan, which fact evidenced either that he understood the resolution of July 18, 1907, to mean that the notes indorsed by him were not to participate in that security, or else that, in his con-

duct of the business of the company, he was taking an unfair advantage of his fellow directors.

However, in the view that we have taken of the true meaning and effect of the resolution of July 18, 1907, it is unnecessary to further pursue this question. We hold that said resolution provided security for the indorsers of such notes only as were jointly indorsed by the four gentlemen named in said resolution, and we accordingly hold that the order of the District Judge of January 6, 1912, was erroneous, and must be reversed, and this case is remanded to the District Court for the Western District of North Carolina for further proceedings not inconsistent with this opinion.

GOFF, Circuit Judge. I find no error in the judgment complained of, and therefore am not in accord with that part of this opinion which directs a reversal of it.