DALTON EQUIPMENT COMPANY, INC., Creditor-Appellee,

v.

Charles E. BROWN, aka Charles Elmer Brown, Debtor-Appellant.

No. 77-1726.

United States Court of Appeals, Ninth Circuit.

March 28, 1979.

Roxanne L. Tess (argued), Sacramento, Cal., for debtor-appellant.

Hermann E. Lorenz, Jr. (argued), Sacramento, Cal., for creditor-appellee.

Before CHOY and SNEED, Circuit Judges and KERR *, District Judge.

KERR, Senior District Judge:

This is an appeal from a district court decision reversing a bankruptcy court's denial of a creditor's motion to extend time to object to discharge.

On March 8, 1974, Brown filed a voluntary petition in bankruptcy. He was adjudged a bankrupt. On March 15 the court ordered that the first meeting of creditors would be held on April 2. This same order fixed July 1, 1974 as the last date for the filing of objections to determine the dischargeability of debts.

The schedule of assets filed by the bankrupt included an entry as follows:

(c) Fish meal venture—informal agreement with Ignacio Vasques (Mazatlan) to produce fish meal using leased motors and mortgaged boats. Still in formative stage.

The outboard motors mentioned in this entry and the Dalton-Brown leases covering them are the subject of this dispute. Dalton was not listed as a creditor in the schedules filed by Brown.

Dalton has admitted it had actual knowledge of the bankruptcy proceeding. The bankruptcy court found that in March 1974 the *Sacramento Bee* published an article setting forth the fact of the bankruptcy and the contents of the judge's order relative to the time deadlines. The court further

* Senior U. S. District Judge for the District of Wyoming, sitting by designation.

found that this article was read by Mandel Feldstein, General Manager of Dalton.

Dalton claims that on April 29, 1974 Brown talked to Mandel Feldstein and told him that the "motors and the Mexican venture" were not part of the bankruptcy proceedings.

On July 8, 1974 Brown filed an amendment to his Schedule A–3 and listed Dalton as a creditor. Formal notice of the above order of the court was received by Dalton on July 10, 1974.

July 12, 1974, after formal notice, Dalton filed a motion for amendment of order and request for turnover order. He sought to have the July 1 time limit extended for 90 days under 11 U.S.C. § 32(b)(1). This was set for hearing in August 1974 but was later dropped by Dalton. On May 29, 1975 Dalton filed a "Notice of Motion to Extend Time to Object to Discharge and to File a Complaint to Determine a Debt to be Non-dischargeable." This was set for hearing on August 5, 1975 but was continued until November 4, 1975.

The bankruptcy judge denied the motion, making the following conclusion of law:

> Dalton . . . is not entitled to an order extending time to file a complaint to determine the non-dischargeability of its claim for the reason that it had actual notice of the date fixed by the court for the filing of such complaints and failed to take any action with respect thereto until the time so fixed by the court expired.

This order denying the motion was entered January 19, 1976.

Upon Dalton's appeal, the district court reversed the bankruptcy judge and remanded the case. The district court held that Bankruptcy Rule 906(b) provides that the court in its discretion may allow acts to be done beyond the specified time, if there is excusable neglect. The district court found a basis for excusable neglect in the statement made by Brown to Feldstein on April 29, 1974. On remand, the bankruptcy court was to determine whether Dalton's claim was non-dischargeable under § 17a(2), (4) or (8). This appeal is taken from that decision of the district court.

The Court of Appeals is a court of limited jurisdiction and its jurisdiction is expressly provided for by statute. The source of jurisdiction of the Court of Appeals in bankruptcy matters is found in Bankruptcy Act § 24a, 11 U.S.C. 47(a) (1977). In relevant part, § 24a provides:

> The United States courts of appeals . . . are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdiction in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings of bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact . . .

This section has uniformly been held to distinguish between "proceedings in bankruptcy" and "controversies arising in proceedings in bankruptcy". Interlocutory orders are appealable under this section only if they arise in "proceedings in bankruptcy" and not if they arise in "controversies" in proceedings in bankruptcy. Interlocutory appeals from "controversies" may be appealable in some cases pursuant to 28 U.S.C. § 1292 (1977). See, *Matter of Brissette*, 561 F.2d 779, 781 (9th Cir. 1977); *Young Properties Corp. v. United Equity Corp.*, 534 F.2d 847, 849–51 (9th Cir. 1976), cert. denied, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976); *United Kingdom Mutual Steamship Assurance Assoc. v. Liman*, 418 F.2d 9, 9–10 (2nd Cir. 1969).

The decision in *Young Properties,* supra, sets out a two-part determination that is helpful in analyzing cases in this area of bankruptcy:

1) Is the order appealed from an interlocutory order, and
2) Is the case a "controversy" or a "proceeding" in bankruptcy.

If we conclude that the order is interlocutory and it involves a controversy, we have no jurisdiction.

The general rule for distinguishing a final order from an interlocutory order has been stated by this court several times. *In re Merle's, Inc.*, 481 F.2d 1016, 1018 (9th Cir. 1973) contains the following definitions:

A decision which finally determines the rights of the parties to secure in that suit the relief they seek is a "final decision". [citation omitted] An interlocutory order or decree is one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on its merits.

Clearly, under these definitions, the order of the district court is interlocutory; the order only allowed Dalton to file a late claim. The cause has not been "finally determined."

Thus, we reach the second half of the two part test set out above. It must be determined whether the interlocutory order of the district court is one in a "proceeding" in bankruptcy or one in a "controversy" in a proceeding in bankruptcy.

As we have expressed before, "[t]he distinction between 'proceedings' and 'controversies' in Section 24(a) is obscure and indefensibly confusing." *Matter of Brissette*, 561 F.2d at 781. A clear, precise definition of "proceedings in bankruptcy" and "controversies arising in proceedings in bankruptcy" has eluded learned writers and jurists.

Collier on Bankruptcy, 14 ed., Vol. 2, paragraph 24.12 states that the most common definition of "proceedings" and the one upon which most of the courts have agreed is that "proceedings are those matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate." This court stated much the same definition in *In re Christ's Church of the Golden Rule*, 172 F.2d 523, 524 (9th Cir. 1949), "proceedings in bankruptcy . . . refer to matters affecting merely the administration and distribution of the estate."

Collier, supra, at paragraph 24.28 gives this definition of the term "controversies":

Controversies arising in proceedings in bankruptcy . . . embrace those matters arising in the course of a bank-

ruptcy proceeding which are not mere steps in the administration of the estate, but which give rise to distinct and separable issues between the trustees and adverse claimants, concerning the right and title to the bankrupt's estate . . .

To determine the answer to the second part of the *Young* test requires that the nature of Dalton's underlying claim be examined in the light of the distinctions between a "proceeding" or "controversy". The district court ordered the bankruptcy judge to hold a hearing on "whether the bankrupt's debt to the appellant comes within the provisions of Sections 17a(2), (4) or (8) of the Bankruptcy Act and is therefore nondischargeable". Dalton's initial motion, as well as seeking additional time in which to file a § 17(c) challenge, sought to enter its claim as a secured creditor and to have an order entered against Brown "requiring the bankrupt to deliver . . . nineteen (19) forty (40) horsepower Evinrude Outboard Motors . . . [to Dalton] within thirty (30) days". The motors were apparently in the possession of Vasques at the time of the motion.

This court in *Young Properties*, 534 F.2d at 852, has stated that:

The principle uniformly used to distinguish a "proceeding" from a "controversy" was stated in the case of *Tefft, Weller & Co. v. Munsuri*, 222 U.S. 114, 118, 32 S.Ct. 67, 69, 56 L.Ed. 118, 120 (1911): "[C]ontroversies in bankruptcy proceedings as used in the section do not include mere steps in proceedings in bankruptcy, but embrace controversies which are not of that inherent character, even though they may arise in the course of *proceedings* in bankruptcy." (Emphasis added).

The distinction is more specifically stated in *Snow v. Dalton*, 203 F. 843, 844 (4 Cir. 1913):

"[The term controversies] must be limited to cases where third parties claim not *in and under* the administration of the bankrupt's estate in bankruptcy but, on the contrary, assert some right hostile to the title of the trustee or going to the

right of the court to administer the particular estate in the bankruptcy case"
. . .

Stated succinctly, the rule is, "Quarrels about what belongs in the bankrupt estate are plainly controversies rather than 'proceedings.'" 9 Moore's, ¶ 110.19[5] at 225.

This court has also said, "The relevant criteria in deciding whether a dispute is a proceeding or a controversy must be directly related to its special effects on the administration of the Bankruptcy Act and to its special demands on appellate court resources . . . appealability thus turns on a sensitive examination of the legal issues involved, the impact of the decision on future bankruptcy administration, the need for interlocutory review and its practical utility." Brissette, 561 F.2d at 782.

Here the dispute is capable of two characterizations. One as a dispute over whether Dalton should be able to file and argue its motions out of time under Bankruptcy Rule 409(a)(2) or 906(b)(2), or one concerning Dalton's underlying claim that Brown's debt to it under the leases should not be discharged by the instant proceedings. If characterized as a dispute of the propriety of an extension of time, the dispute would be one primarily affecting the administration of the Bankruptcy Act and therefore a proceeding. See, In re Imperial "400" National, Inc., 391 F.2d 163, 167–68 (3rd Cir. 1968). However, if we look to the underlying nature of the claim, a dispute concerning whether a debt is properly subject to the proceedings, it is clearly a controversy. See, Young Properties, 534 F.2d at 852–53; 9 Moore's Federal Practice 2nd ed., § 110.19[5] at 225 (1975).

Moore counsels in his treatise, 9 Moore's § 110.19[5], that in close cases a controversy construction should be favored. He characterizes this procedure as both sound and pragmatic. The appropriateness of this approach is well illustrated in the case of United Kingdom Mut. S. S. Assur. Ass'n v. Liman, 418 F.2d 9 (2nd Cir. 1969). This case involved a borderline situation similar to the case on review. The court's conclu-

sion that a controversy construction serves the judicial economy is one in which we can agree.

We therefore conclude that 1) the order is interlocutory and 2) this case is a "controversy" not a "proceeding" in bankruptcy. We therefore hold we are without jurisdiction to consider the appeal of this interlocutory order under Section 24(a) of the Bankruptcy Act.

Appeal DISMISSED.