718 F.2d 322
 Bankr. L. Rep. P 69,428
In re INTERNATIONAL ENVIRONMENTAL DYNAMICS, INC., a Delaware
corporation, Debtor.
Chester B. SALOMON, Trustee in Bankruptcy of Robin
International, Inc., Appellant,
v.
Donald M. LOGAN, International Environmental Dynamics, Inc.,
a Debtor in Possession, William J. Currer, Jr., as
Disbursing Agent, John V. Rogers, Jerry Barbour, Jules
Becker, Dee Cameron, Joseph Gereghty, et al., Appellees.
 No. 81-4514.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 10, 1983.
Decided Oct. 13, 1983.
 
 Issac M. Pachulski, Anthony Castanares, Stutman, Treister & Glatt, Los Angeles, Cal., Chester B. Salomon, New York City, for appellant.
 Robert Reeser, Oakland, Cal., Donald Logan, Palo Alto, Cal., William J. Currer, Jr., Los Angeles, Cal., for appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before SNEED, FARRIS, and REINHARDT, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Appellant Chester Salomon, trustee in bankruptcy of Robin International, Inc., challenges an order of the bankruptcy court. The court awarded interim counsel fees to Donald M. Logan from a fund accumulated by International Environmental Dynamics, Inc., a debtor and a debtor in possession in a case arising under Chapter XI of the former Bankruptcy Act. Robin International, Inc. claims an interest in the monies awarded to Logan and contends that the award of fees imperils that interest.
 
 
 2
 The district court dismissed the appeal from the bankruptcy court's order on alternative grounds. We reverse the district court's first alternative holding that appellant lacks standing to challenge the order. We affirm, however, the district court's second alternative holding that the bankruptcy court did not abuse its discretion in awarding fees to Logan.
 
 I.
 FACTS
 
 3
 This case involves a complex and extended bankruptcy proceeding instituted by International Environmental Dynamics, Inc. (IED) in 1970 under Chapter XI of the Bankruptcy Act. 11 U.S.C. Sec. 701 et seq. (1976) (repealed 1978). As part of the reorganization proposal, IED's creditors were divided into two groups, the Rogers creditors and the Anstey creditors. The plan also separated the business affairs of IED as debtor in possession from the affairs of IED as a corporate entity. In 1977 and 1978, the debtor in possession received monetary advances from the Anstey and Rogers creditors and from corporate IED. These advances were used to protect IED's primary asset, a partially developed business property, from foreclosure for nonpayment of local taxes.[1]
 
 
 4
 In December 1980, the economic future of this property brightened and the bankruptcy court approved an agreement with Perini Land & Development Company that provided funds for the development of the property and for payment of the administrative expenses of the estate. The Perini agreement gave promise of returning sums sufficient to perform IED's Plan of Arrangement and to provide corporate IED and the Rogers and Anstey creditors with a substantial excess. The agreement provided for an initial advance of $2.7 million. Approximately $1 million was allocated to reimburse advances made to the estate; of this amount, $597,000 was allocated to reimburse corporate IED.
 
 
 5
 The Perini agreement also budgeted $500,000 for payment of interim fees to counsel. In January 1981, the bankruptcy court issued orders allowing interim fees of $300,000 to the counsel for the debtor in possession and $225,000 to the counsel for the Rogers creditors. These awards depleted the amount allocated for interim fees.
 
 
 6
 On January 7, 1981, the debtor in possession moved the bankruptcy court to authorize reimbursement for sums advanced for preservation of the property by the Anstey and Rogers creditors and the corporate IED. The trustee for Robin International, Inc. (Robin) filed an answer contending that the sums attributed to corporate IED had in fact been paid by Robin.[2] By order dated January 30, 1981, the bankruptcy court authorized reimbursement for advances made to the debtor by the Rogers and Anstey creditors.[3] The court, however, withheld the amount allocated to IED pending determination of the person or persons entitled to it. The money was placed in a certificate of deposit.
 
 
 7
 At a hearing on February 10, 1981, Donald M. Logan, counsel for the Anstey creditors, applied for interim fees. The disbursing agent informed the court that there were other claimants to the funds held in the certificate of deposit. The court proposed an order allowing Logan $175,000 from the funds held in the certificate of deposit. At another hearing on April 6, 1981, the court heard Logan's application for fees and Robin's evidence in support of its claims. The bankruptcy court then proposed that Logan be paid fees of $175,000 from the amount held in the certificate of deposit and that Robin receive the rest without prejudice to its right to further reimbursement when other funds become available. When Robin failed to respond to the proposal, the bankruptcy court ordered Logan paid from the certificate. The bankruptcy court did not purport to rule on Robin's claims in its order allowing Logan fees.
 
 
 8
 The district court dismissed Robin's appeal from the order on alternative grounds. It held either that Robin lacked standing to appeal because it was not an aggrieved party under section 39c of the Bankruptcy Act, or that the bankruptcy court's order did not constitute an abuse of discretion.
 
 II.
 JURISDICTION
 
 9
 Section 24a of the Bankruptcy Act provides our jurisdiction to decide Robin's appeal. The Bankruptcy Reform Act of 1978 (the Code) repealed section 24a and replaced it with 28 U.S.C. Secs. 1293(a) and (b). The Code, however, also established a transition period between October 1, 1979 and April 1, 1984. During the transition period cases initiated under the Act are governed by the old law while newly filed bankruptcies are governed by the Code.[4] Section 24a of the Act is therefore the pertinent jurisdictional provision in this case. See e.g., In re Cross, 666 F.2d 873, 877 (5th Cir. Unit B 1982); In re Continental Investment Corp., 637 F.2d 1, 3 & n. 1 (1st Cir.1980); Dail v. United States, 635 F.2d 315, 317 & n. 4 (4th Cir.1980), cert. denied, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 120 (1981); cf. In re Cochise College Park, Inc., 703 F.2d 1339, 1344 (9th Cir.1983) (Section 24a establishes jurisdiction for appeal from summary judgment in case filed under Bankruptcy Act).
 
 In relevant part, section 24a provides:
 
 10
 The United States courts of appeals ... are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact ....
 
 
 11
 11 U.S.C. Sec. 47(a) (1976) (repealed 1978) (emphasis added).
 
 
 12
 An order authorizing the interim award of attorneys' fees is an interlocutory order, e.g., In re Callister, 673 F.2d 305, 306-07 (10th Cir.1982) (per curiam), which order is appealable under section 24a only if it arises in "proceedings in bankruptcy," as opposed to "controversies arising in proceedings in bankruptcy." Dalton Equipment Co. v. Brown, 594 F.2d 195, 196 (9th Cir.1979).[5] "Proceedings are those matters of an administrative character, including questions between the bankrupt and his creditors, which are presented in the ordinary course of the administration of the bankrupt's estate." Id. at 197 (quoting 2 Collier on Bankruptcy p 24.12 (14th ed. 1976) ); see also In re Christ's Church of the Golden Rule, 172 F.2d 523, 524 (9th Cir.1949).[6] An order granting attorneys' fees arises in "proceedings in bankruptcy" and is therefore appealable under section 24a. See Warren v. Palmer, 130 F.2d 887 (2d Cir.1942) (per curiam); 2 Collier on Bankruptcy p 24.14 (14th ed. 1976); cf. Young Properties Corp. v. United Equity Corp., 534 F.2d 847, 853 (9th Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976) (proceedings include determination of fee to be paid to the bankruptcy officials and orders for disposition of property of the bankrupt) (dicta).
 
 
 13
 Moreover, we reject appellee Logan's suggestion that we lack jurisdiction because this case is moot. Logan argues that In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981), indicates that this case is moot because Robin failed to obtain a stay of the bankruptcy court's order and the disputed funds have already been paid to Logan.[7] Roberts Farms dismissed as moot an appeal by trustees challenging bankruptcy orders that disallowed certain claims, confirmed a plan of arrangement, and approved a settlement with the FDIC. Id. at 794. By the time of the appeal, the plan of arrangement had been substantially completed. We concluded that the plan of arrangement had been so far implemented that it would be impossible to fashion effective relief. Id. at 797. As an alternative ground for finding the case moot, we held that appellant's failure to obtain a stay had permitted such a comprehensive change in circumstances as to render it inequitable for this court to consider the merits of the appeal. Id. at 798.
 
 
 14
 Neither of these grounds for our holding in Roberts Farms compels a finding of mootness in this case. Because Logan is a party to this appeal, this court could fashion effective relief by remanding with instructions to the bankruptcy court to order the return of erroneously disbursed funds. Cf. Burbank Anti-Noise Group v. Goldschmidt, 623 F.2d 115, 116 (9th Cir.1980) (per curiam), cert. denied, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Nor would it be inequitable to hear the merits of Robin's appeal. Logan has known since 1981 that Robin contests the bankruptcy court's order that he be paid from the certificate of deposit. We therefore conclude that this case is not moot and we have jurisdiction to hear Robin's appeal.
 
 III.
 STANDING
 
 15
 The district court erred in concluding that Robin lacked standing because it was not an aggrieved person within the meaning of section 39c of the Act. Section 39c permits appeal by a "person aggrieved by an order of a referee." 11 U.S.C. Sec. 67(c) (1976) (repealed 1978). To have standing to appeal, Robin must show that it was "directly and adversely affected pecuniarily by the order of the bankruptcy court." In re Fondiller, 707 F.2d 441, 442 (9th Cir.1983).
 
 
 16
 Klein v. Rancho Montana de Oro, Inc., 263 F.2d 764 (9th Cir.1959), is apposite. In Klein, the court suggested that an order disposing of assets from which a claimant seeks to be paid "adversely affects" that claimant so as to confer standing to challenge the order. See id. at 771-72. It was unnecessary for the court to so hold, however, because there were ample additional funds from which those seeking review of the order could be paid. See id. at 772.
 
 
 17
 In this case we adopt the suggestion in Klein and hold that in a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid. Robin satisfies this test for standing because it asserts a claim to the funds that the bankruptcy court awarded to Logan.[8]
 
 IV.
 PROPRIETY OF THE BANKRUPTCY COURT'S ORDER
 
 18
 An award of fees in a bankruptcy proceeding will not be disturbed unless the awarding court has abused its discretion or erroneously applied the law. Southwestern Media, Inc. v. Rau, 708 F.2d 419, 422 (9th Cir.1983).
 
 
 19
 Contrary to Robin's suggestion, the amounts allocated for interim counsel fees and other expenses in the Perini agreement were not cast in concrete. The Perini agreement states that the budgeted amounts are approximations and are subject to determination and approval by the bankruptcy court. The court did not abuse its discretion in ordering interim fees in an amount greater than that initially contemplated in the Perini agreement.
 
 
 20
 Robin's claim essentially is that the bankruptcy court failed to protect its possible interest in the funds placed in the certificate of deposit. The bankruptcy court has not yet ruled on Robin's claims, but it is reasonable to expect that additional funds will be available to pay legitimate claims. In these circumstances, it cannot be said that the order of fees to Logan was an abuse of the bankruptcy court's equitable power to distribute assets.
 
 
 21
 Our holding that the bankruptcy court did not abuse its discretion reflects our understanding that the final adjustment of the interests of corporate IED, the Rogers creditors, and the Anstey creditors will assure that IED is compensated for its advances in a manner equivalent to that in which the Anstey and Rogers creditors are compensated. The record shows that the bankruptcy court has treated IED's advances as administrative expenses identical to those made by the Rogers and Anstey creditors. Corporate IED is therefore entitled to full reimbursement with interest for its contribution to the debtor in possession.[9] See In re Cochise College Park, Inc., 703 F.2d at 1356 & n. 22; see also Missouri v. Ross, 299 U.S. 72, 74-75, 57 S.Ct. 60, 61-62, 81 L.Ed. 46 (1936); In re Columbia Ribbon Co., 117 F.2d 999, 1001 (3d Cir.1941); Section 64a of the Bankruptcy Act, codified in 11 U.S.C. Sec. 104(a) (1976) (repealed 1978).
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Since 1974, a confirmed Second Amended Plan of Arrangement has governed the administration of the debtor in possession. The plan requires that corporate IED proceed diligently in a state court action to determine title to the business property. IED succeeded in this litigation in 1976 and obtained possession of the property in 1978. The plan further provides that in the event of a recovery, proceeds are to be used first to discharge the administrative costs and to pay balances due to Class D creditors. Corporate IED retains a one-third interest and the Rogers and Anstey creditors share the remaining two-thirds interest in any excess proceeds
 
 
 [2]
 This was Robin's first appearance in IED's bankruptcy proceedings. Robin sought creditor status based on the cash advances it claimed to have made, but the bankruptcy court has not yet ruled on Robin's claims. Robin owned approximately 90% of the capital stock of corporate IED. Robin has itself gone bankrupt and is represented by Chester Salomon, its trustee in bankruptcy
 
 
 [3]
 The bankruptcy court ordered reimbursement of approximately $157,000 to the Rogers creditors and $181,000 to the Anstey creditors
 
 
 [4]
 Section 403(a) of Title IV of the Bankruptcy Reform Act provides:
 A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted. Pub.L. No. 95-598, Sec. 403(a), 92 Stat. 2549, 2683 (1978).
 
 
 [5]
 In cases initiated under the new Bankruptcy Code, interlocutory orders are not appealable to the courts of appeals under Secs. 1293(a) and (b). In re Mason, 709 F.2d 1313, 1315-16 (9th Cir.1983); In re Rubin, 693 F.2d 73, 76-77 (9th Cir.1982)
 
 
 [6]
 In contrast, controversies involve "cases where third parties claim not in and under the administration of the bankrupt's estate in bankruptcy, but, on the contrary, assert some right hostile to the title of the trustee or going to the right of the court to administer the particular estate in the bankruptcy case." Snow v. Dalton, 203 F. 843, 844 (4th Cir.1913); see Dalton Equipment Co., 594 F.2d at 197-98
 
 
 [7]
 Bankruptcy Rule 805 requires an appellant to procure a stay pending the appeal of an order approving a sale of property or issuance of a certificate of indebtedness. See, e.g., In re Charlton, 708 F.2d 1449, 1454-55 (9th Cir.1983). Rule 805 does not imply that a stay is required for Robin's appeal from the order directing payment to Logan, because the order involved neither a sale of property nor a certificate of indebtedness
 
 
 [8]
 Rogers v. Bank of America Nat. Trust & Savings Ass'n, 142 F.2d 128 (9th Cir.1944), and In re J.M. Wells, Inc., 575 F.2d 329 (1st Cir.1978), do not indicate that Robin lacks standing. In Rogers, a referee awarded counsel fees for defending the bankrupt against a quiet title action. The fee award was to be paid from the income from the real property. A bank claiming title to the real property sought review of the order. This court held that the bank had no claim to the income from the property while it was in the legal possession of the bankrupt and the bankruptcy court. See id. at 129. Moreover, because the bank had filed no claim in the bankruptcy proceedings, it lacked standing to challenge the disposition of the funds of the estate. Id. In contrast, Robin does claim a right to be paid from the funds awarded to Logan
 In re J.M. Wells, Inc. held that a bankrupt whose debts substantially exceed his assets does not have standing to appeal an award of attorneys' fees paid out of the estate. 575 F.2d at 330-31; see also Skelton v. Clements, 408 F.2d 353, 354 (9th Cir.), cert. denied, 394 U.S. 933, 89 S.Ct. 1202, 22 L.Ed.2d 462 (1969) (hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate). That rule is inapplicable here because Robin does not claim standing as a surrogate for the bankrupt IED, but instead alleges that it is itself entitled to the disputed funds.
 
 
 [9]
 Our disposition of this case does not require us to determine whether the payments attributed to corporate IED were in fact made by Robin. The bankruptcy court will make the initial determination of the legitimacy of Robin's claims