GRABER, Circuit Judge:
 

 In January 1995, P.R.T.C., Inc. (PRTC), and Braunstein Int’l Corp. (BIC) filed Chapter 7 bankruptcy petitions, which the bankruptcy court later consolidated. Gregory A. Akers was appointed as the trustee of PRTC, and Harold S. Taxel was appointed as the trustee of BIC.
 

 The trustees determined that the only significant assets were the right to avoid various transactions and the right to sue various individuals, including Baum Trust (Baum) and the lawyers for the debtors, Duckor Spradling & Metzger (Duckor). The estates, however, had outstanding creditor claims totaling over $2 million. The estates owed Baum about $1 million of that total.
 

 The trustees concluded that the estates lacked sufficient funds to pursue those claims or rights, even though they believed that the claims and rights had “significant value.” Thus, they agreed to assign the claims and rights to Baum, the estates’ largest creditor.
 
 [1]
 

 
 *777
 
 Under the assignment, Baum “shall have the right at its sole discretion to pursue, not pursue, settle, compromise or collect upon such Collective Claims or Rights.” If Baum does collect or receive any money from the claims, the estates are entitled to 50 percent of the net proceeds (that is, gross proceeds minus Baum’s attorney fees and costs).
 

 Duckor objected to the assignment, arguing that the trustees cannot transfer to a creditor their rights to sue various defendants and to avoid various transactions. The bankruptcy court disagreed and approved the assignment.
 

 Duckor appealed that decision to the district court. Baum argued that the district court lacked jurisdiction over the appeal, because (1) Duckor did not have standing to challenge the bankruptcy court’s order, and (2) the bankruptcy court’s order was not an appealable, final judgment. The district court held that it had jurisdiction and upheld the bankruptcy court’s decision on the merits. This timely appeal ensued. For the reasons that follow, we affirm.
 

 STANDING
 

 A.
 
 Standard of Review
 

 The district court held that Duckor has standing to appeal. This court reviews that decision for clear error.
 
 See McClellan Fed. Credit Union v. Parker (In re Parker),
 
 139 F.3d 668, 670 (9th Cir.) (“Whether an appellant is a person aggrieved is a question of fact, which this court reviews for clear error.”),
 
 cert. denied,
 
 - U.S. -, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998).
 

 B.
 
 Applicable Principles
 

 To prove an injury in fact under Article III (constitutional standing), the appellant need only allege an injury “fairly traceable” to the wrongful conduct; that injury need not be financial.
 
 See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),
 
 843 F.2d 636, 642 n. 2 (2d Cir.1988). Bankruptcy cases, however, generally affect the rights of many.
 
 See Tilley v. Vucurevich (In re Pecan Groves of Ariz.),
 
 951 F.2d 242, 245 (9th Cir.1991) (“[Bankruptcy litigation[ ] ... almost always implicates the interests of persons who are not formally parties to the litigation.”). To prevent unreasonable delay, courts have created an additional prudential standing requirement in bankruptcy cases: The appellant must be a “person aggrieved” by the bankruptcy court’s order.
 
 See Brady v. Andrew (In re Commercial W. Fin. Corp.),
 
 761 F.2d 1329, 1334 (9th Cir.1985) (“[W]e have adopted the ‘person aggrieved’ test as the appropriate standard for determining standing to appeal under the Code.”);
 
 In the Matter of Andreuccetti,
 
 975 F.2d 413, 416-17 (7th Cir.1992) (“Its purpose is to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal.”) (citation and internal quotation marks omitted). An appellant is aggrieved if “directly and adversely affected pecuniarily by an order of the bankruptcy court”; in other words, the order must diminish the appellant’s property, increase its burdens, or detrimentally affect its rights.
 
 Fondiller v. Robertson (In Matter of Fondiller),
 
 707 F.2d 441, 442 (9th Cir.1983).
 

 C.Analysis ofDuckor’s Standing
 

 Baum first argues that
 
 Fondiller
 
 requires us to reverse the district court’s decision. In
 
 Fondiller,
 
 the wife of a debt- or appealed an order appointing a law firm as special counsel to the bankruptcy trustee.
 
 See id.
 
 at 441. This court held that
 
 *778
 
 the wife was not “aggrieved,” because her “only demonstrable interest in the order is as a potential party defendant in an adversary proceeding.”
 
 Id.
 
 at 443.
 

 As is evident, the only interest of the wife in
 
 Fondiller
 
 was her desire to prevent future litigation. Here, Duckor has a similar interest — the bankruptcy court’s order, in fact, led Baum to sue Duckor. But Duckor also has alleged that it is a creditor of the estates and, thus, that it has the type of direct pecuniary interest that was lacking in
 
 Fondiller. See Johns-Manville,
 
 843 F.2d at 642 n. 3 (distinguishing
 
 Fondiller,
 
 because “the creditor opposing a plan of reorganization is distinguishable from marginal parties in the bankruptcy proceedings who face potential harm incident to the bankruptcy court’s orders”).
 

 Courts have been reluctant to afford broad standing to creditors:
 

 It might be said that all creditors and the debtor are parties to every order entered in a bankruptcy proceeding. However, that does not help in determining which parties have standing to take an appeal. If such reasoning were employed, the result would be a rule that any party who is involved either directly, indirectly or tangentially in the bankruptcy proceeding has the power to appeal from almost any order entered by the bankruptcy judge.
 

 10
 
 Collier on Bankruptcy §
 
 8001.05, p. 8001-11 (Lawrence P. King ed., 15th ed. 998). Thus, for example, “a creditor has no independent standing to appeal an adverse decision regarding a violation of the automatic stay.”
 
 Pecan Groves,
 
 951 F.2d at 245.
 

 A creditor does, however, have a direct pecuniary interest in a bankruptcy court’s order transferring assets of the estate.
 
 See Salomon v. Logan (In re International Envtl. Dynamics, Inc.),
 
 718 F.2d 322, 326 (9th Cir.1983) (“[I]n a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid.”).
 
 See also Commercial W. Fin.,
 
 761 F.2d at 1335 (holding that the creditors had standing, because “[t]he plan eliminated their interests in the borrower notes and deeds of trust and disposed of the assets in the estate from which they seek to be paid”);
 
 Johns-Manville,
 
 843 F.2d at 642 (“As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors’ ability to receive payment of their claims.”). The bankruptcy court’s order transferred to Baum the right to sue various defendants, including Duckor and Baum, and the right to avoid various transactions (thereby returning property to the estates). The transfer of those rights and claims left the estates without any other significant asset. Moreover, the transfer led the bankruptcy court to authorize the abandonment of the claims against Baum — obviously, Baum cannot sue itself and will not avoid any transactions involving itself. In the circumstances, Duckor appears to have standing.
 

 Baum nevertheless suggests three reasons why the principles from the foregoing cases do not apply here. First, this case involves the transfer of intangible assets rather than money or other tangible property. However, the reasoning of the cited cases applies equally to intangible assets.
 
 Cf. Andreuccetti,
 
 975 F.2d at 417 (holding that the debtors had standing to challenge the settlement of the estate’s right to sue various entities, because “[t]he outcome of this litigation could potentially have a huge effect on the liabilities of the [debtors] and could give them a substantial surplus upon emerging from bankruptcy”).
 
 [2]
 

 
 *779
 
 Second, Baum suggests that, unlike the money in
 
 International Envtl. Dynamics
 
 and
 
 Commercial W. Fin.,
 
 the assets here have no value. Baum is correct that the assets have no value
 
 if left in the estates,
 
 because the estates do not have sufficient funds to pursue the claims. Baum incorrectly concludes from this fact that the assets themselves are worthless.
 

 As Baum acknowledged in the assignment agreement, the assets have “significant value” if assigned to a third party.
 
 [3]
 
 In particular, the assignment agreement gives the estates 50 percent of any recovery. Moreover, David J. Braunstein (Braunstein) offered the estates $50,000 for the same assets. The trustees rejected the proposal, because the right to sue various defendants and the right to avoid various transactions are rights that would be asserted primarily against Braunstein and his affiliates. Nevertheless, the offer demonstrates that the assets have value.
 

 Third, Baum argues that Duckor is not actually a creditor of the estates. The record, however, shows that Duckor has claims against the estates of at least $9,859.38, and Duckor appeared before the bankruptcy court, in part, as a creditor.
 

 Baum contends that the trustees later rejected Duckor’s claims against the estates, but it provides no support in the record for that argument. Baum presented that same unsupported argument to the district court. Although the district court did not make an express factual finding that Duckor is a creditor of the estates, that finding is implicit in its holding; Duc-kor always has argued that it has standing only as a creditor. The district court’s implicit finding is not clearly erroneous.
 

 D.
 
 Conclusion
 

 Duckor has demonstrated that the bankruptcy court’s order — transferring the estates’ only significant assets — will aggrieve it. That being so, the district court did not clearly err by holding that Duckor has standing.
 

 APPEALABLE FINAL JUDGMENT
 

 A.
 
 Standard of Review
 

 The district court held that the bankruptcy court’s order was an appeal-able, final judgment. This court reviews that decision
 
 de novo. See Ernst & Young v. Matsumoto (In re United Ins. Management, Inc.),
 
 14 F.3d 1380, 1383 (9th Cir.1994).
 

 B.
 
 Analysis
 

 A district court has jurisdiction over a bankruptcy appeal from: (1) final judgments, orders, or decrees, and (2) interlocutory orders with leave from the bankruptcy court.
 
 See
 
 28 U.S.C. § 158(a)(1) & (3).
 
 [4]
 
 Duckor did not seek or obtain leave from the bankruptcy court to appeal. Thus, the district court had jurisdiction over the appeal, if at all, as a final judgment.
 

 Ordinarily, a final judgment is one that “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.”
 
 Elliott v. Four Seasons Properties (In re Frontier Prop
 
 
 *780
 

 erties, Inc.),
 
 979 F.2d 1358, 1362 (9th Cir.1992) (citation and internal quotation marks omitted). However, this court has adopted a “pragmatic approach” to finality in bankruptcy cases.
 
 See id.
 
 at 1363.
 
 See also La Grand Steel Prods. Co. v. Goldberg (In Matter of Poole, McGonigle & Dick, Inc.),
 
 796 F.2d 318, 321 (9th Cir.) (“The issue of finality must follow a pragmatic approach.”) (citation and internal quotation marks omitted),
 
 amended by
 
 804 F.2d 576 (9th Cir.1986). In bankruptcy cases, a judgment is “final” if it: (1) “finally determines the discrete issue to which it is addressed,” and (2) “resolves and seriously affects substantive rights.”
 
 Frontier Properties,
 
 979 F.2d at 1363.
 

 The district court correctly held that the bankruptcy court’s order satisfied those requirements. As noted above, the bankruptcy court’s order assigned to Baum the estates’ right to sue various individuals and to avoid various transactions. On its face, that order “finally determine[d] the discrete issue to which it is addressed.”
 
 See, e.g., Frontier Properties,
 
 979 F.2d at 1363. Baum nevertheless argues that the decision is not “final,” because the bankruptcy court retains some control over the assigned assets. We are not persuaded.
 

 The bankruptcy court retains control only over monetary matters if Baum prevails in litigation or avoids a transaction. For example, the bankruptcy court can determine the appropriate amount of attorney fees and costs, if disputed. The bankruptcy court lacks discretion, however, to alter the scope of the assignment. That being so, the bankruptcy court’s order finally assigned the assets to Baum.
 
 See, e.g., Poole,
 
 796 F.2d at 321 (stating that a bankruptcy court’s order is final if “further bankruptcy court proceedings would not affect the scope of the order”).
 

 Turning to the second criterion, the assignment transferred the only significant assets from the estates. Therefore, the assignment seriously affected the rights of all creditors, including Duckor, to receive payment for their claims.
 

 We conclude that the district court did not err by holding that the order was “final” for the purposes of appellate review.
 
 Cf. Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis),
 
 113 F.3d 1040, 1044 (9th Cir.1997) (holding that an order to disgorge funds was “final,” even though the order did not distribute the funds);
 
 United States v. Stone (In re Stone),
 
 6 F.3d 581, 583 n. 1 (9th Cir.1993) (holding that a “judgment resolv[ing] the question of the priority of the federal tax lien[ ] ... constitutes a final and appeal-able order over which we have jurisdiction”).
 

 AVOIDANCE POWERS
 

 A.
 
 Standard of Review
 

 The bankruptcy court held that the trustees could transfer their avoidance powers. This court reviews that legal conclusion
 
 de novo. See Siriani v. Northwestern Nat’l Ins. Co. (In re Siriani),
 
 967 F.2d 302, 303 (9th Cir.1992).
 

 B.
 
 Analysis
 

 The bankruptcy code expressly authorizes trustees and, in some circumstances, debtors to avoid various transactions.
 
 See
 
 11 U.S.C. § 544 (trustee);
 
 [5]
 
 11 U.S.C. § 522(f) & (h).
 
 [6]
 
 Although no provi
 
 *781
 
 sion of the bankruptcy code similarly authorizes others to exercise those powers, “[i]t is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee pursuant to a plan of reorganization” under 11 U.S.C. § 1123(b)(3)(B).
 
 [7]
 

 Winston & Strawn v. Kelly (In re Churchfield Mgmt. & Inv. Corp.),
 
 122 B.R. 76, 81 (Bankr.N.D.Ill.1990).
 
 See also McFarland v. Leyh (In the Matter of Texas Gen. Petroleum Corp.),
 
 52 F.3d 1330, 1335 (5th Cir.1995) (“Section 1123(b)(3)(B) allows a plan to transfer avoidance powers to a party other than the debtor or the trustee.”);
 
 Citicorp Acceptance Co. v. Robison (In re Sweetwater),
 
 884 F.2d 1323, 1327 (10th Cir.1989) (“[T]he plan provision naming Robison as a representative of the estate for the purpose of enforcing these avoidance claims is consistent with § 1123(b)(3)(B).”).
 

 Duckor argues that the cited principle does not apply to this case, because the trustees did not transfer their avoidance powers pursuant to a Chapter 11 reorganization plan. This court, however, has held to the contrary.
 

 In
 
 Briggs v. Kent (In re Professional Inv. Properties of Am.),
 
 955 F.2d 623, 625 (9th Cir.1992), the trustee sold its avoidance powers to a creditor. Unlike in the cases cited above, in
 
 Professional Inv.
 
 the transfer did not occur as part of a Chapter 11 reorganization plan.
 
 See id.
 
 at 626 (“[WJhile it was not argued by Miller, nor was he specifically identified for this purpose, he could best be identified as a representative appointed to enforce the debt
 
 in line with
 
 section 1123(b)(3)(B).”) (emphasis added). Nevertheless, this court held that a trustee can transfer its avoidance powers: (1) pursuant to a Chapter 11 reorganization plan,
 
 or
 
 (2) outside a Chapter 11 reorganization plan, when a creditor is pursuing interests common to all creditors.
 
 See id.
 
 (“If a creditor is pursuing interests common to all creditors or is appointed for the purpose of enforcement of the plan, he may exercise the trustee’s avoidance powers.”).
 
 See also Howard v. Fidelity & Deposit Co. of Maryland (In Matter of Royale Airlines, Inc.),
 
 98 F.3d 852, 856 n. 4 (5th Cir.1996) (noting that
 
 Professional Inv.
 
 “permit[ted] assignment of a trustee’s avoidance powers under particular circumstances outside [a] reorganization plan”);
 
 Fleet Natl Bank v. Doorcrafters (In re North Atl. Millwork Corp.),
 
 155 B.R. 271, 281 (Bankr.D.Mass.1993) (noting that
 
 Professional Inv.
 
 “permitted the assignment of a trustee’s avoiding powers outside a Chapter 11 plan”).
 

 Duckor argues that
 
 Professional Inv.
 
 is distinguishable, because
 
 Professional Inv.
 
 was a Chapter 11 case, whereas this is a Chapter 7 case. We disagree. Nothing in this court’s opinion in
 
 Professional Inv.
 
 states whether it was a Chapter 7 or Chapter 11 case. The bankruptcy court’s decision on remand suggests that, like this case,
 
 Professional Inv.
 
 was a Chapter 7 case.
 
 See Briggs v. Kent (In re Professional Inv. Properties of Am., Inc.),
 
 157 B.R. 166, 170-71 (Bankr.W.D.Wash.1993) (“A transfer to or for the benefit of the creditor made while the debtor was insolvent within the preference period on account of an antecedent debt is preferential to the extent it enables creditors to receive more than they would in a case under
 
 Chapter 7
 
 had the transfer not been made, and the creditors received payment in accordance with the Bankruptcy Code.”) (emphasis added) (footnote omitted).
 
 See also Met-Al, Inc. v. Gabor (In re Metal
 
 
 *782
 

 Brokers Int’l, Inc.),
 
 225 B.R. 920, 921 (Bankr.E.D.Wis.1998) (“Met-Al places reliance upon
 
 [Professional Inv.],
 
 which, like the instant case, was a chapter 7 case.”).
 

 Even if
 
 Professional Inv.
 
 did arise under Chapter 11, one thing is clear: the transfer did not occur in a plan of reorganization pursuant to § 1123(b)(3)(B). Duc-kor has not presented, nor have we found, any reason why a Chapter 11 trustee can transfer its avoidance powers outside a reorganization plan, but a Chapter 7 trustee cannot. We therefore hold that the principles in
 
 Professional Inv.
 
 apply to both Chapter 7 and Chapter 11 cases.
 

 Finally, Duckor argues that
 
 Professional Inv.
 
 applies only to cases in which the trustee actually asserts its avoidance powers before the transfer. The court in
 
 Professional Inv.
 
 did state that the trustee had asserted its avoidance powers.
 
 See Professional Inv.,
 
 955 F.2d at 626 (“[T]he trustee originally asserted the avoidance powers in the bankruptcy and district court.”). The court emphasized that fact simply because it demonstrated that both the trustee and the bankruptcy court had authorized the creditor to use the trustee’s avoidance powers.
 
 See id.
 
 (distinguishing
 
 Texas Gen. Petroleum Corp. v. Evans (In re Texas Gen. Petroleum Corp.),
 
 58 B.R. 357 (Bankr.S.D.Tex.1986), where “there was no such involvement by the trustee or the bankruptcy court. The creditor was acting independently and for his sole benefit”). Similarly, here, both the trustees and the bankruptcy court authorized Baum to use the trustees’ avoidance powers.
 

 In summary, we see no principled way to distinguish this case from
 
 Professional Inv.
 

 [8]
 

 Therefore, the bankruptcy court did not err by holding that the trustees could transfer their avoidance powers.
 

 DISINTERESTED PARTY
 

 A.
 
 Standard of Review
 

 The bankruptcy court allowed the trustees to transfer the right to sue various individuals and to avoid various transactions to an interested party,
 
 i.e.,
 
 a creditor. This court reviews the bankruptcy court’s factual findings underlying that decision for clear error, and its legal conclusions
 
 de novo. See Siriani,
 
 967 F.2d at 303-04.
 

 B.
 
 Analysis
 

 Duckor argues that 11 U.S.C. § 701(a)(1) prohibits the bankruptcy court from authorizing the trustees to transfer to Baum the right to sue various individuals and to avoid various transactions.
 
 [9]
 
 The bankruptcy court’s order allowed Baum to exercise certain of the trustees’ powers, but it did not appoint Baum as a trustee pursuant to 11 U.S.C. § 701(a)(1). The bankruptcy court can authorize a creditor to exercise those powers if: (1) the creditor is pursuing interests common to all creditors,
 
 see Professional Inv.,
 
 955 F.2d at 626 (“If a creditor is pursuing interests common to all creditors ..., he may exercise the trustee’s avoidance powers.”); and (2) allowing the creditor to exercise those powers will benefit the remaining creditors,
 
 see Sweetwater,
 
 884 F.2d at 1327 (“The primary concern is whether a successful recovery by the appointed representative would benefit the debtor’s estate and particularly, the debt- or’s unsecured creditors.”) (citation and in
 
 *783
 
 ternal quotation marks omitted);
 
 Official Comm. of Unsecured Creditors of Maxwell Newspapers, Inc. v. MacMillan, Inc. (In re Maxwell Newspapers, Inc.),
 
 189 B.R. 282, 287 (Bankr.S.D.N.Y.1995) (“The primary consideration ... is the benefit bestowed upon the estate as a result of the transfer, in particular the benefit to the unsecured creditors.”). The assignment at issue here satisfied both requirements.
 

 Under the assignment agreement, Baum can pursue both its individual claims and the estates’ collective claims. However, if Baum prevails on any of the claims, even its individual claims, the remaining creditors receive 50 percent of the net proceeds. Thus, Baum is not pursuing solely its own interest but, instead, the interest of all creditors.
 
 Cf. Texas Gen. Petroleum, 58
 
 B.R. at 358 (holding that the creditor did not satisfy the foregoing requirement, because it was “trying to exercise the avoidance power for itself as a sole creditor, not for the benefit of the debtor’s estate or the creditors as a whole”).
 

 Duckor argues that the assignment will not benefit the remaining creditors, because the assignment led the bankruptcy court to abandon the estates’ claims against Baum. However, the trustees informed the bankruptcy court that the claims against Baum were dubious, at best. Thus, abandonment of those claims likely cost the estates little, if anything.
 

 Moreover, when determining whether an assignment benefits the remaining creditors, we consider the assignment in light of the other options before the court. The bankruptcy court could have ordered the claims and rights to remain a part of the estates. Under that option, the creditors would receive no benefit, because the estates had insufficient funds to pursue those claims and rights.
 

 Similarly, the bankruptcy court could have ordered the trustees to abandon the assets. Again, the creditors would receive no benefit.
 

 The bankruptcy court could have approved the sale of the claims and rights to Braunstein for $50,000. However, the right to sue various individuals and the right to avoid various transactions are rights that the estates would assert primarily against Braunstein and his affiliates. In the circumstances, transferring the claims to Braunstein would have prevented the estates from recovering any more than $50,000. The trustees already had spent about $50,000 on bankruptcy administrative costs. Had the court approved the transfer to Braunstein, the creditors likely would receive no benefit.
 
 [10]
 

 Finally, the bankruptcy court could have approved the transfer of the assets to Baum. That option had the potential to recover between $70,000 and $1 million for the remaining creditors, which would be sufficient to satisfy at least some of the creditors’ claims. In the process, the transfer would require the abandonment of claims against Baum. But, as noted above, the claims against Baum were unlikely to recover any money for the estates.
 

 Faced with these four options, the bankruptcy court properly approved the transfer to Baum. Only that option had the potential to provide the remaining creditors with any benefit.
 

 AFFIRMED.
 

 [1]
 

 . The agreement identifies the rights assigned:
 

 Based upon the foregoing, the parties believe that one or both of the bankruptcy estates and/or their respective trustees, pursuant to Bankruptcy Codes sections 541 through 552 have claims and rights against or with respect to one or more of the following persons or entities: Braunstein, Christina Braunstein, Braunstein de Mexico, BIC Tech, Inc., Solution Technologies, the employees, agents, attorneys and other professionals, or any representatives of the foregoing, and any affiliates, assigns, other successors in interest and any other persons or entities acting in concert with any of the foregoing, which claims or rights relate to or arise out of pre-petition or post-petition transfers of property of BIC and/or PRTC or their estates, the misappropriation of assets of BIC and/or PRTC or their estates, and/or the usurpation of corporate opportunities of BIC and/or PRTC or their estates. Such claims or rights include, but are not limited to claims for monies owed by Braunstein to BIC stated on BIC's financial statements as an asset due from its shareholders in the principal amount of $140,000. Such claims and rights also include but are not limited to such claims or rights arising un
 
 *777
 
 der either non-bankruptcy law and bankruptcy law. All of the foregoing claims and rights described in this paragraph are herein referred to as the "Collective Claims and Rights.” The parties further believe the Collective Claims and Rights to be of significant value.
 

 [2]
 

 . Ordinarily, a debtor cannot challenge a bankruptcy court’s order unless there is likely to be a surplus after bankruptcy.
 
 See, e.g., Fondiller,
 
 707 F.2d at 442 ("[A] hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate.”).
 

 [3]
 

 . For example, if the likelihood of prevailing in the litigation or avoiding the transfers is 10 percent, and the amount that the estates are likely to collect is $2 million, a reasonable investor would conclude that assets are worth $200,000 (before discounting to present value).
 

 [4]
 

 . Title 28 U.S.C. § 158(a)(1) and (3) provide:
 

 (a) The district courts of the United States shall have jurisdiction to hear appeals
 

 (1) from final judgments, orders and decrees;
 

 (3) with leave of the court, from other interlocutory orders and decrees;
 

 and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 

 [5]
 

 . Title 11 U.S.C. § 544 provides in part:
 

 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debt- or....
 

 [6]
 

 . Title 11 U.S.C. § 522(f) and (h) provides in part:
 

 (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section....
 

 (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to
 
 *781
 
 the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer....
 

 [7]
 

 . Title 11 U.S.C. § 1123(b)(3)(B) provides:
 

 (b) Subject to subsection (a) of this section, a plan may—
 

 (3) provide for—
 

 (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest^]
 

 [8]
 

 . Duckor’s real argument seems to be that
 
 Professional Inv.
 
 was wrongly decided. A three-judge panel, however, lacks authority to overrule the decision of another panel.
 
 See United States v. Gay,
 
 967 F.2d 322, 327 (9th Cir.1992) ("As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel.”). We therefore do not address Duckor's implicit argument.
 

 [9]
 

 . Title 11 U.S.C. § 701(a)(1) provides:
 

 Promptly after the order for relief under this chapter, the United States trustee shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28 or that is serving as trustee in the case immediately before the order for relief under this chapter to serve as interim trustee in the case.
 

 [10]
 

 . In a motion to reconsider the approval of the assignment, Braunstein increased his offer to more than $163,000. However, Duckor has not argued that the bankruptcy court abused its discretion by denying that motion. We therefore do not consider the effect of Braunstein's increased offer.
 
 See Sanchez v. Pacific Powder Co.,
 
 147 F.3d 1097, 1100 (9th Cir.1998) ("Ordinarily, a party’s failure to raise an issue ... constitutes a waiver of that issue.”).