DISSENT
ROGERS, Circuit Judge,
dissenting.
Because appellants do not have appellate standing, I would dismiss their appeal. The JT & T parties have not established that they have a protected pecuniary interest supporting reversal of either the order denying Hyundai’s request for derivative standing or the order denying Hyundai’s motion to lift stay. Accordingly, they do not have appellate standing to challenge those determinations.
“Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith.” Harker v. Troutman (In re Troutman Enters., Inc.), 286 F.3d 359, 364 (6th Cir.2002). Standing to appeal a bankruptcy order is limited to “persons aggrieved” by that order, i.e., parties “directly and adversely affected pecuniarily.”[1] Id. (quoting Fid. Bank, Nat’l Ass’n v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir.1996)). Consequently, parties may only appeal bankruptcy orders in which they have a direct financial stake such that the order directly “diminishes their property, increases their burdens or impairs their rights.” Id. This prudential requirement, derived from the now-repealed Bankruptcy Act of 1898,[2] is based on “the ‘particularly acute’ need to limit appeals in bankruptcy proceedings, which often involve a ‘myriad of parties ... indirectly affected by every bankruptcy court or *247 der[.]’ ” In re Combustion Eng’g, 391 F.3d at 215 (alteration in original).
In most cases where appellate standing is at issue before a court of appeals, the question is whether the party who appealed the bankruptcy court’s order to the district court was sufficiently aggrieved by that ruling. Here, as the majority opinion notes, there is no dispute that the party who initially challenged the bankruptcy court’s orders, Hyundai, had appellate standing to do so. Instead, the issue in this case is whether the JT & T parties may now appeal the district court’s reversal of the bankruptcy court’s orders.
Even if the JT & T parties did not need to be persons aggrieved to defend an order of the bankruptcy court before the district court, see Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 160 (D.N.J.2005), they must be such parties to appeal the district court’s ruling to this court. The appellate standing doctrine exists to prevent indirectly affected parties from stalling bankruptcy proceedings, and this interest is implicated in the context of an appeal from a district court to a court of appeals as much as in an appeal from a bankruptcy court to a district court. Moreover, there is no more of a “perverse imbalance” in permitting only one side to appeal a district court judgment than in permitting only one side to appeal a bankruptcy court decision, the context in which the majority accepts application of the appellate standing limitation.
The JT & T parties argue that they were aggrieved by the district court order granting Hyundai derivative standing and lifting the automatic bankruptcy stay, and that they thus should be permitted to appeal that decision. They primarily argue for appellate standing in their capacity as defendants to future litigation, pointing out that they would not be subject to suit by either the estate or Hyundai but for the district court’s decision. In the alternative, the JT & T parties contend that they have standing as creditors to challenge any orders affecting the assets and administration of the bankruptcy estate. Neither of those contentions is correct.
A.
The JT & T parties do not have appellate standing, either as defendants to an adversary proceeding or as creditors of the estate, to attack the order granting Hyundai derivative standing. First, it is well established that parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding. See Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 743 (3d Cir.1995); In re El San Juan Hotel, 809 F.2d at 155; In re Fondiller, 707 F.2d at 443; Moran v. Official Comm. of Admin. Claimants, No. 1:05CV2285, 2006 WL 3253128, at *5 (N.D.Ohio Nov.8, 2006) (“[T]here are no cases which support the argument that litigation, whether real or potential, makes someone a ‘person aggrieved’ for standing purposes.”); In re Ashford Hotels, Ltd., 235 B.R. 734, 739 (S.D.N.Y.1999). This is because the interest that entities such as the JT & T parties assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code. To be considered a person aggrieved, an appellant must establish both an “injury in fact as well as that the interest which he seeks to protect ... is an interest which the Bankruptcy Act seeks to protect or regulate.” In re The Harwald Co., 497 F.2d 443, 444 (7th Cir.1974). Even if we assume that 11 U.S.C. §§ 544(b) and 550(a) do preclude all parties other than the trustee from bringing avoidance and recovery actions, as the JT & T parties contend, the purpose of such *248 preclusion is presumably to allow the trustee to retain control over the administration of the estate. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 7, 13, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (discussing the “unique” role that the trustee plays in managing the estate). It is not to protect parties against whom relief may be sought for the estate. The interest of the JT & T parties as adversary defendants, which is avoiding liability to the estate, is diametrically opposed to the primary goal of §§ 544(b) and 550(a), which is to allow the estate to recover fraudulently transferred assets, as well as that of the Bankruptcy Code in general, which “is to minimize the injury to creditors,” In re The Harwald Co., 497 F.2d at 444. Because the interest of the JT & T parties as defendants to an adversary proceeding is not one that the Code provisions relied upon protect, they do not have appellate standing in this capacity to challenge the reversal of the order denying Hyundai derivative standing.
Moreover, as several courts have observed, an order that simply allows an adversary proceeding to go forward does not directly diminish a defendant’s property, increase his burdens, or impair his rights. E.g., In re El San Juan Hotel, 809 F.2d at 155; In re Fondiller, 707 F.2d at 443. As those courts have explained, a bankruptcy order permitting a creditor to bring an action on the estate’s behalf affects such an adversary defendant’s rights incidentally, rather than directly. See, e.g., In re El San Juan Hotel, 809 F.2d at 155. Although a named defendant in an adversary proceeding might have an interest in defending himself against liability, an order that merely allows the action to go forward does not impair his ability to so. Id.; see also Fidelity Bank, 77 F.3d at 883. The order does not, for example, prevent the defendant from asserting a claim or defense in the adversary proceeding that might otherwise be available to him. Fidelity Bank, 77 F.3d at 883; In re El San Juan Hotel, 809 F.2d at 155. Here, indeed, the JT & T parties state that they will argue in the adversary action that the California Settlement prevents Hyundai from recovering transferred assets in excess of the amount needed to satisfy allowed pre-petition and administrative creditor claims.
Because the interest that the JT & T parties assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code provisions relied upon in this appeal, it is irrelevant that it is no longer uncertain whether the JT & T parties will be sued by the estate. The JT & T parties point out that Hyundai has already substituted the estate as plaintiff in the district court action against them. They contend, based on this, that the order’s effect on their interest is now sufficiently definite to permit them to appeal that decision. This argument misses the point. Absent a direct, protected interest, it does not matter how certain the effect of the order is. Indeed, the JT & T parties’ potential liability is no less speculative than that faced by named defendants in other cases who were held not to be persons aggrieved. In In re El San Juan Hotel, for example, the First Circuit held that a former bankruptcy trustee did not have appellate standing to challenge the appointment of counsel for the estate to bring a fraudulent concealment action against him. 809 F.2d at 155. Because the former trustee’s “only interest [wa]s as party defendant,” the First Circuit held that the appointment “ha[d] no direct and immediate impact on [his] pecuniary interests.” Id. This was the case even though the moving party explicitly “request[ed] permission to prosecute a suit” and the bankruptcy court “granted the requisite leave to file the complaint.” Id. at 153 *249 (emphasis added). See also Moran, 2006 WL 3253128, at *5 (holding that an adversary defendant was not a person aggrieved even though creditor committee acting on behalf of the estate “ha[d] already filed claims against him”).
In re Fondiller, upon which the JT & T parties rely, is not to the contrary. In that case, the Ninth Circuit held that an appellant could not appeal from a bankruptcy order authorizing the employment of special counsel for the estate to investigate and “recover assets allegedly concealed by appellant.” 707 F.2d at 443. Although it does not appear that an action had yet been brought against the appellant at the time of her appeal, unlike in this case, it was hardly unlikely there that one would soon be brought. At the time of the order, the appointed party had already performed an “extensive investigation” into the fraudulent transfers. Id. at 442. Moreover, the trustee was specifically appointed to “recover” the transferred assets. Id. Nothing in the Ninth Circuit’s analysis suggests that it hinged upon the fact that an adversary action had not yet been brought such that the appellant would have had appellate standing had she already been named as a defendant. In fact, in the subsequently decided Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774 (9th Cir.1999), the Ninth Circuit strongly suggested that a party is not aggrieved by an order that permits an adversary proceeding to go forward, even where the party has already been named as a defendant. There, the Ninth Circuit held that the interest of an appellant who had already been sued was “similar” to the interest asserted in In re Fondiller. Id. at 778. Nonetheless, the court held that the Duc-kor appellant had appellate standing because it “also ha[d] alleged” that it would be harmed by the order as a creditor of the estate, and thus had “the type of direct pecuniary interest that was lacking in Fon-diller.” Id.; see also In re El San Juan Hotel, 809 F.2d at 155 (explicitly relying upon In re Fondiller in holding that the appellant was not aggrieved despite virtual certainty that he would be named as a defendant).
The JT & T parties were also not aggrieved in their capacity as purported creditors of the estate. This is a distinct theory, as the Duckor court explained. As an initial matter, it is not entirely clear from the record whether the JT & T parties have a legitimate claim against the estate. Although they are listed as creditors in the bankruptcy proceedings, the JT & T parties have yet to file a proof of claim with the bankruptcy court as to any debt that Trailer Source owes them.[3] Moreover, on appeal to this court, the JT & T parties have not attempted to explain their precise claim against the estate. Nonetheless, because the deadline for filing proofs of claim has not passed and because Hyundai arguably conceded before the district court that the JT & T parties have some form of claim against the estate,[4] I assume for purposes of this appeal that the JT & T parties are in fact creditors.
*250 However, even if the JT & T parties are creditors, that does not necessarily mean that they are persons aggrieved by the order permitting Hyundai to bring claims on the estate’s behalf. A party does not automatically have appellate standing by virtue of being a creditor. See, e.g., Williams v. Cheves (In re Williams), 49 Fed.Appx. 845, 847 (10th Cir.2002); Richardson v. Treacy, Shaffel, Moore & Mueller (In re Richardson Indus. Contractors, Inc.), 189 Fed.Appx. 91, 93 (3d Cir.2006); Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1500 (10th Cir.1994); Tilley v. Vucurevich (In re Pecan Groves of Ariz.), 951 F.2d 242, 245 (9th Cir.1991). “[W]hether or not [a party] is a creditor misses the point.... To have standing to appeal, [the party] must demonstrate he has a direct and adverse pecuniary interest in each order he challenges.” In re Am. Ready Mix, 14 F.3d at 1500.
Here, the JT & T parties have not pointed to evidence establishing that they will suffer a direct pecuniary loss if Hyundai cannot recover on the fraudulent conveyance claims for the estate, and thus do not have appellate standing despite their being creditors. A creditor generally has appellate standing to challenge an order affecting the specific “assets from which [he] seeks to be paid.” Salomon v. Logan (In re Int’l Envtl. Dynamics, Inc.), 718 F.2d 322, 326 (9th Cir.1983); see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir.1997). However, even a party asserting a claim against the estate must show a realistic likelihood of suffering pecuniary harm as a result of the complained-of action. Cf. Schum v. Zwirn Special Opportunities Fund LP (In re The Watch Ltd.), 257 Fed.Appx. 748, 750 (5th Cir.2007); Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy, Inc.), 395 F.3d 198, 203 (5th Cir.2004) (“Even a claimant to a fund must show a realistic likelihood of injury in order to have standing.”). As the record here currently stands, it is unclear whether allowing Hyundai to bring the avoidance and recovery action would even affect the payment of the JT & T parties’ claim. The JT & T parties have not provided this court with any description of their claim or the assets out of which that claim could potentially be paid, much less pointed to evidence in the record to substantiate any such allegations.
Without this kind of evidence, it is impossible to ascertain whether there is a reasonable likelihood that the JT & T parties would actually be harmed in their capacity as creditors by the grant of derivative standing. If, for example, the estate contains little of value aside from the fraudulent conveyance claims and the JT & T parties’ claim is unsecured and subordinate to those of all other creditors, it is very possible that the JT & T parties would not have recovered anything even in the absence of a grant of derivative standing to Hyundai.[5] Or, if the estate has additional assets and the JT & T parties have a small, secured claim that is superior to all other claims, then they will likely recover on their claim regardless of whether the adversary action brought by Hyundai is successful. In either of these scenarios, permitting Hyundai to pursue the avoidance and recovery action could hardly be said to have a negative impact on the JT & T parties’ interests as creditors. See In re The Watch Ltd., 257 Fed.Appx. at 750 (stating, in dictum, that the creditor’s injury was too speculative where he could not show a likelihood of recovering on his *251 unsecured claim); In re Richardson Indus. Contractors, Inc., 189 Fed.Appx. at 93 (holding that unsecured creditor could not appeal decision determining priority among secured creditors because it would not affect the payment of his claims); see also Fishell v. Soltow (In re Fishell), No. 94-1109, 1995 WL 66622, at *2 (6th Cir. Feb.16, 1995) (holding that debtors lacked appellate standing because they had not provided information “regarding the estate’s other assets and liabilities, the cost of litigation, or other factors regarding the litigation’s impact on the estate”); Chemlen v. Bank of Ir. First Holdings, Inc., No. 93-1592, 1993 WL 443822, at *3 (1 st Cir. Nov.3, 1993) (recognizing district court application of the same rule). Thus, even if it is assumed that the JT & T parties have some sort of claim against the estate, they have not established that they were aggrieved by the reversal of the order denying derivative standing to Hyundai.
Furthermore, it is obvious from the adverse interests of the JT & T parties and the estate that the JT & T parties are not actually bringing this appeal as creditors. Because of their dual status as creditors and adversary defendants, the JT & T parties will not actually suffer a pecuniary injury if the estate does not recover any assets as a result of the grant of derivative standing to Hyundai. Although the JT & T parties have pointed to no evidence in the record to suggest that any money recovered for the estate by Hyundai would be applied to their claim, it is theoretically possible that this claim could go unpaid if the estate recovered little or nothing. But it would also be the case in that situation that the JT & T parties paid little or nothing to the estate as defendants. Because the JT & T parties are the source of the potential estate assets in question, every dollar of their claim that goes unpaid as a result of Hyundai’s not recovering any assets represents at least one dollar that they did not have to first pay to the estate.
Moreover, because Hyundai presumably could not recover any administrative expenses if it is not successful, see 11 U.S.C. § 503(b)(3)(B), a failed adversary proceeding would not drain the estate of assets and thereby indirectly affect the JT & T parties’ claims. Thus, if the estate does not recover anything in the adversary proceeding brought by Hyundai, the JT & T parties do no worse than break even. In reality, however, the JT & T parties will fare far better if the estate does not recover. As the JT & T parties themselves assert, Hyundai is by far the estate’s largest creditor and likely would be the primary beneficiary of a judgment favorable to the estate.[6] Because most of the money from such a judgment would go to Hyundai, the JT & T parties would not be able to recover all of the money as creditors that they paid into the estate as defendants and would thus suffer a considerable pecuniary loss.
The JT & T parties’ contention that they have an interest in ensuring the maximization of estate assets is clearly disingenuous as asserted here. The best outcome for the estate, recovery of all of the assets that were allegedly transferred, is the worst outcome for the JT & T parties. Likewise, the best outcome for the JT & T parties, *252 the estate recovering nothing, is the worst outcome for the estate. It is obvious from the adverse interests of the JT & T parties and the estate that the JT & T parties are not appealing as creditors of the estate, but as defendants to an adversary proceeding brought for the estate. See Magnoni v. Globe Inv. & Loan Co. (In re Globe Inv. & Loan Co.), 867 F.2d 556, 560 (9th Cir.1989) (“The appellants’ cause of action ... is a disingenuous attempt to use the Bankruptcy Code to their advantage. The appellants’ request for relief shows them to be aggrieved property owners with interests adverse to the estate, not creditors.”).
Because the JT & T parties will not suffer pecuniary harm if the estate does not recover any assets, this case is distinguishable from Duckor, 177 F.3d 774. In that case, upon which the JT & T parties rely, the Ninth Circuit held that one bankruptcy creditor, Duckor, had appellate standing to challenge the assignment of several causes of action possessed by the estate to another creditor, Baum. Both Baum and Duckor were among the various parties against whom the estate held separate claims. Because the estate could not afford to pursue the actions despite their significant value, the trustee assigned them to Baum. Id. at 776. Under the terms of the assignment, the decision of whether to pursue any of the claims was left solely to Baum. If it did pursue a claim and obtain a favorable judgment or settlement, however, Baum was required to pay one-half of its net proceeds to the estate. Id. at 777. The Ninth Circuit concluded that Duckor had appellate standing because the order transferred assets out of the estate and essentially abandoned all claims against Baum, which would surely not bring a cause of action against itself. Id. at 778. Unlike here, Duckor was not the source of all of the potential estate assets at issue. It was possible that money from the cause of action against Baum, which the trustee in effect abandoned, would actually have benefited Duckor. Moreover, there appears to have been at least some evidence in that case as to the nature of Duckor’s claims against the estate, making its purported injury less speculative than those alleged by the JT & T parties here.
Finally, the JT & T parties do not have standing as creditors to challenge the grant of derivative standing on the alternative ground that this order could delay the bankruptcy proceedings. The only remaining injury that the JT & T parties, as creditors, may plausibly suffer as a result of the grant of derivative standing is having to wait longer for their claim against the estate to be paid out of an asset other than the judgment proceeds. But this harm is also highly speculative. As discussed, the JT & T parties have not even established that they would have received payment on their claim in the absence of the grant of derivative standing. Further, assuming that the estate would have had enough assets to satisfy the JT & T parties’ claim, it is still not evident whether the grant will actually stall payment on that claim. If the JT & T parties have a secured claim against the estate, for example, then they might not have to wait to be paid until the avoidance and recovery action against them is litigated or settled, as they assert. As secured creditors, the JT & T parties could request that the bankruptcy court lift the stay under 11 U.S.C. § 362(d) so that they could pursue their interests outside of the bankruptcy proceedings. Cf. e.g., In re Edwards, 962 F.2d 641, 645 (7th Cir.1992) (“[A] secured creditor can pursue his remedies outside of bankruptcy, and though the automatic stay might thwart him, he can ask the bankruptcy judge to lift it.” (citations omitted)). Indeed, the record here reveals that this *253 form of relief has already been granted to one of the estate’s secured creditors, Am-South Bank. Such a remedy might in fact lead to the quicker payment of the JT & T parties’ claim.
Furthermore, such an injury appears to be remote and consequential, and thus insufficient for appellate standing. Generally, a creditor must show that an order immediately and concretely injures him, by, for example, reducing the amount of assets available for the payment of his specific claims or eliminating his specific interest in the estate. See, e.g., Kane v. Johns-Manville Corp. (In re Johns-Manville Corp., et al.), 843 F.2d 636, 642 (2d Cir.1988) (order confirming amended plan gave creditor “less than what he might have received”); In re Commercial W. Finan. Corp., 761 F.2d 1329, 1335 (9th Cir.1985) (order eliminating appellant’s secured interests in notes and disposing of estate assets out of which it sought to be paid). The JT & T parties point to no cases holding that a creditor has appellate standing to challenge an order that simply has the incidental effect of causing him to wait longer to receive payment from the estate. Where a creditor has not established an immediate, protected interest in the assets at issue, it cannot be that he may challenge an order because it may indirectly prolong the bankruptcy. Otherwise, a creditor could appeal virtually every order issued by the bankruptcy court, a result that the doctrine of appellate standing was specifically designed to prevent.
That the JT & T parties do not have appellate standing to challenge the reversal of the order denying appellate standing to Hyundai does not mean that other parties would not have been able to do so. The trustee here, for example, surely could have appealed from the district court decision. As discussed, even if §§ 544(b) and 550(a) do forbid parties other than the trustee from bringing fraudulent conveyance actions for the estate, their aim in doing so is presumably to preserve the trustee’s role as the administrator of the estate. It is also possible that other creditors of the estate would have had appellate standing. If, for instance, another creditor offered evidence substantiating an allegation that its claims might go unpaid as a result of the grant of derivative standing, that creditor might have been considered a person aggrieved. But neither the trustee nor any other creditors participated in proceedings before the district court and then attempted to join in the present appeal. The JT & T parties may not, as they attempt to do, use the interests of those entities to gain appellate standing. It is well-established that a party “cannot rest his claim to relief on the legal rights or interests of third parties.” Worth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This general prudential limitation is “particularly relevant” to appellate standing in bankruptcy proceedings, which
regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.
In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir.2000) (citation omitted); see also AgriProcessors, Inc. v. Iowa Quality Beef Supply Network, LLC (In re Tama Beef Packing, Inc.), 92 Fed.Appx. 368, 369 (8th Cir.2004).
B.
For similar reasons, the JT & T parties do not have appellate standing to challenge the order lifting the automatic bankruptcy stay so that Hyundai can bring an independent action against them to recover on *254 its secured interests. As defendants to such an action, the JT & T parties may suffer a pecuniary loss, but that loss is not protected by the automatic stay provisions of the Bankruptcy Code. The JT & T parties have not pointed to any cases suggesting that the automatic stay provisions of the Code exist to protect parties who potentially owe money to the estate, as opposed to the estate itself or creditors of the estate.
Moreover, as alleged creditors, the JT & T parties have not offered any evidence establishing that there is a reasonable likelihood that the payment of their claims against the estate would be affected by the lifting of the stay for this purpose. The JT & T parties have not shown, for example, that they also have an interest in the assets that Hyundai claims to have a secured interest in, such that their claims may go unpaid if the stay is lifted. The JT & T parties similarly have not explained why the bankruptcy proceedings would be significantly delayed if Hyundai were permitted to bring suit outside of the bankruptcy.
I note that several courts have held that creditors may never challenge bankruptcy orders that lift the automatic stay or that address violations of this protection. This is because, those courts have reasoned, the automatic stay “is intended solely to benefit the debtor estate.” E.g., In re Pecan Groves of Ariz., 951 F.2d at 245; see also In re Am. Ready Mix, 14 F.3d at 1501. Consequently, these courts have concluded that only the trustee, or in some instances the debtor, can enforce the automatic stay’s protections or appeal if it is lifted. See, e.g., Marin v. Midland Loan Servs., Inc. (In re Marinkovic), 158 Fed.Appx. 885, 886-87 (9th Cir.2005) (order annulling the automatic stay); In re Am. Ready Mix, 14 F.3d at 1501 (order lifting the automatic stay as to one creditor); In re Pecan Groves of Ariz., 951 F.2d at 245 (violation of the stay). While this rationale supports my conclusion here, it is unnecessary to adopt such reasoning if, as I conclude, the JT & T parties do not have appellate standing for the reasons stated above.
I would dismiss the JT & T parties’ appeal for lack of standing.

. By contrast, at least in Chapter 11 proceedings, any "party in interest,” such as a debtor, trustee, or creditor, may raise and be heard on any issue before the bankruptcy court. 11 U.S.C.§ 1109(b).

. Under § 39(c) of the former Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (repealed 1978), appellate standing was restricted to a "person aggrieved by an order of the referee.” Although the current Bankruptcy Code contains no similar provision, courts of appeals have continued to impose this requirement as a prudential limitation on appellate standing. See, e.g., In re Combustion Eng'g, Inc., 391 F.3d 190, 214 (3d Cir.2004); Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273 (2d Cir.1997); Morgenstern v. Revco D. S., Inc. (In re Revco D. S., Inc.), 898 F.2d 498, 499 (6th Cir.1990); In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir.1987); Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 443 (9th Cir.1983).

. By contrast, six of Trailer Source’s other eight creditors have already filed proofs of claim. The only other creditor not yet to have done so is a lawyer for Hyundai, which has already filed a proof of claim.

. In the very first sentence of its reply brief filed with the district court, Hyundai staled that "[t]he JT & T Parties are parties in interest in the Trailer Source case because they purport to assert a claim against the estate (although they have filed no proof of claim).” Because "party in interest” status is generally limited to the debtor, trustee, and certain creditors, see § 1109(b), this statement arguably concedes that the JT & T parties are creditors.

. This scenario is by no means unrealistic. The district court here found that the trustee had consistently testified that the estate con-tamed little to no value. Moreover, in a bankruptcy court filing, the JT & T parties stated that they are mere general creditors.

. Both in its motion for derivative standing and on appeal, Hyundai stated that it would subordinate its secured claims and receive a pro rata distribution from the recovery along with the allowed claims of other creditors if it were permitted to pursue the fraudulent conveyance claims on the estate’s behalf. If Hyundai does this, the JT & T parties will still likely receive only a small percent of the monies obtained from a judgment against them, given the size of Hyundai’s claim against the estate and the number of other creditors of the estate.