In re Lee, CIVIL NO. 15-00278 SOM/RLP, 2015 WL 7274035, at *1 (D. Hawai'i Nov. 17, 2015). The United States Supreme Court has stated:
[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Fed. R. Civ. P. 52(a) if it undertakes to duplicate the role of the lower court. In applying the clearly erroneous standard ..., [reviewing] courts must constantly have in mind that their function is not to decided factual issues de novo. If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
Anderson v. City of Bessemer, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (some alterations in Anderson ) (citations and some internal quotation marks omitted). The standards described in Anderson apply when a district court reviews the factual findings of a bankruptcy court. See, e.g., Ingram v. Burchard, 482 B.R. 313, 322 (N.D. Cal. 2012) ; In re Daewoo Motor Am., Inc., 471 B.R. 721, 732 (C.D. Cal. 2012), aff'd , 554 Fed. Appx. 638 (9th Cir. 2014) ; In re Folsom, Civil No. 10CV2440 L( ), 2011 WL 3489681, at *1 (S.D. Cal. Aug. 8, 2011), aff'd sub nom. , Folsom v. Davis, 513 Fed.Appx. 651 (9th Cir. 2013).
Sebetich v. Woods, CIVIL 15-00233 LEK-BMK, 2016 WL 8710426, at *4-5 (D. Hawai'i Jan. 29, 2016) (alterations in Sebetich ).
DISCUSSION
I. Prudential Standing
The Ninth Circuit remanded this case to address whether Barnes had prudential standing to seek a stay of the Tehani's sale. Ninth Circuit Order, 2018 WL 3943018, at *1 (citing In re Point Ctr. Fin., Inc., 890 F.3d 1188, 1191-92 (9th Cir. 2018) ). In Point Center, the Ninth Circuit stated:
All circuits, including this one, limit standing to appeal a bankruptcy court order to "person[s] aggrieved" by the order. See, e.g., Opportunity Fin., LLC v. Kelley, 822 F.3d 451, 457 (8th Cir. 2016) ; Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999). Under this prudential standing doctrine, only a "person aggrieved," that is, someone who is "directly and adversely affected pecuniarily" by a bankruptcy court's order, has standing to appeal that order. Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 443 (9th Cir. 1983). An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes. See, e.g., P.R.T.C., 177 F.3d at 777.
As we explained in Fondiller, this prudential standing requirement "exists *836 to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings." Fondiller, 707 F.2d at 443. Bankruptcy proceedings invariably give rise to disputes that implicate the interests of many different stakeholders, including those who are not formally parties to the litigation. Id. Limiting appellate standing to "person[s] aggrieved" by a particular bankruptcy order serves the interests of judicial efficiency. Id.; see also In re Ray, 597 F.3d 871, 874 (7th Cir. 2010) ("[C]ourts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding.") (quoting Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 609 (7th Cir. 1998) ).
890 F.3d at 1191-92 (alterations in Point Ctr. ).
In its ruling in the 5/9/16 Bankruptcy Order, the bankruptcy court stated that Barnes lacked standing to seek a stay of the sale of the Tehani and Trailer was based on the dismissal of Barnes's in rem claims against the Tehani in the Admiralty Action. On remand, the bankruptcy court concluded that, because of the Ninth Circuit's reversal of the dismissal of Barnes's claims against the Tehani, Barnes had prudential standing to seek a stay of the sale of the Tehani pending appeal. [12/14/18 Remand Decision at 5-6.] This Court agrees that, because of Barnes's maritime lien against the Tehani, the authorization of the sale of the Tehani had a potentially detrimental effect on Barnes's rights. See Point Ctr., 890 F.3d at 1191. Therefore, it adopts the bankruptcy court's conclusion that Barnes had prudential standing to seek a stay of the sale of the Tehani, pending appeal.
II. Authorization to Sell the Tehani
The bankruptcy court stated the 5/9/16 Bankruptcy Order had two separate rulings: 1) authorization of the sale of the Tehani, pursuant to 11 U.S.C. § 363(b) and (c) ; and 2) a ruling that the sale would be free and clear of all liens, pursuant to § 363(f). The bankruptcy court concluded it clearly lacked jurisdiction to rule that the sale would be free and clear of Barnes's maritime lien, based on the language of the Admiralty Opinion. [12/14/18 Remand Decision at 6-7.]
In the Admiralty Opinion, the Ninth Circuit held that: 1) "[t]he bankruptcy court lacked jurisdiction to adjudicate Barnes's maritime lien"; 889 F.3d at 533 ; and 2) even if the bankruptcy court had jurisdiction over the Tehani, the manner in which the bankruptcy court adjudicated the lien was improper, id. at 533-35. As to the second holding, the Ninth Circuit noted a maritime lien: 1) "accompanies the property into the hands of a bona fide purchaser[, and] can be executed and divested only by a proceeding in rem"; and 2) "cannot be extinguished except through the application of admiralty law." Id. at 534 (citations and internal quotation marks omitted). In the instant case, because the bankruptcy court applied bankruptcy law instead of admiralty law, and because Barnes never voluntarily submitted to the bankruptcy court's jurisdiction of his maritime lien against the Tehani, the bankruptcy court's attempt to dispose of the lien had no effect. Id. at 535. This Court therefore agrees with and adopts the bankruptcy court's conclusion that the bankruptcy court lacked jurisdiction to sell the Tehani free and clear of Barnes's maritime lien.
*837 However, the conclusion that the bankruptcy court had jurisdiction to sell the Tehani subject to Barnes's maritime lien must be rejected. While the bankruptcy court noted, in its 12/14/18 Remand Decision, that the Ninth Circuit held that the bankruptcy court did not have jurisdiction to adjudicate Barnes's maritime lien, [12/14/18 Remand Decision at 7,] a closer look at why the bankruptcy court was without jurisdiction is instructive. The Ninth Circuit stated:
The bankruptcy court lacked jurisdiction to adjudicate Barnes's maritime lien because the admiralty court had already obtained jurisdiction over the Tehani . "As between two courts of concurrent and co-ordinate jurisdiction, having like jurisdiction over the subject-matter in controversy, the court which first obtains jurisdiction is entitled to retain it without interference, and cannot be deprived of its right to do so because it may not have first obtained physical possession of the property in dispute." Moran v. Sturges, 154 U.S. 256, 283-84, 14 S. Ct. 1019, 38 L.Ed. 981 (1894).
Admiralty Opinion, 889 F.3d at 533 (emphasis added) (footnote and some citations omitted). In other words, the district court's control over the vessel was exclusive and the later-filed bankruptcy petition did not divest in rem jurisdiction by the district court. Id. at 524.
Because the district court had exclusive control over the Tehani, the bankruptcy court could not and did not have jurisdiction over the Tehani during the SHR Bankruptcy proceedings. Thus, even though a sale of the Tehani subject to Barnes's maritime lien arguably would have protected Barnes's rights, see 12/14/18 Remand Decision at 8, the bankruptcy court had no jurisdiction and thus could not sell the Tehani subject to the lien. Admiralty Opinion, 889 F.3d at 524 ("Moreover, the automatic bankruptcy stay did not affect Barnes's maritime lien against the Tehani, and the bankruptcy court had no authority to dispose of the lien through the application of bankruptcy law."). This Court therefore concludes the bankruptcy court did not have jurisdiction to authorize the sale of the Tehani, regardless of whether the sale would be subject to Barnes's lien.
Because the bankruptcy court lacked jurisdiction to authorize the sale of the Tehani, the 5/9/16 Bankruptcy Order is void. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (noting that "a jurisdictional error [by the bankruptcy court] will render a judgment void"); see also In re Sasson, 424 F.3d 864, 876 (9th Cir. 2005) (noting that "a final judgment is void for purposes of [Fed. R. Civ. P.] 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound" (emphasis, citation, and internal quotation marks omitted)).
Barnes's Appeal is therefore granted, and the 5/9/16 Bankruptcy Order is reversed.
III. Avoidance of the Sale
The bankruptcy court's analysis of the avoidance issue is premised upon its conclusion that it had jurisdiction to authorize the sale of the Tehani, as long as the sale was subject to Barnes's maritime lien. [12/14/18 Bankruptcy Order at 8-10.] The bankruptcy court's analysis must be rejected.
However, this Court agrees with the bankruptcy court's ultimate recommendation that the district court in the Admiralty Case is in the best position to determine the practical effects of this Court's rulings regarding the sale of the Tehani. In recent *838 months, Barnes has completed the arrest of the Tehani. [Admiralty Action, Return of Warrant for Maritime Arrest, filed 3/14/19 (dkt. no. 534).] The district court has been considering either allowing AOE to post a bond to secure the Tehani's release or having the Tehani sold by the United States Marshals Service. See, e.g., id., Minute Order, filed 4/26/19 (dkt. no. 554). In light of these and other recent developments in the Admiralty Action, this Court defers to the district court in the Admiralty Action to determine the practical effect of the reversal of the 5/9/16 Bankruptcy Order.
CONCLUSION
On the basis of the foregoing, the bankruptcy court's Memorandum of Decision on Remanded Issues, filed December 14, 2018, is HEREBY ADOPTED IN PART AND REJECTED IN PART. Further, Barnes's appeal of the bankruptcy court's May 9, 2016 Order Granting Trustee's Motion for Order (I) Authorizing Sale of Boat and Trailer Under Bankruptcy Code § 363, and (II) Otherwise Granting Relief, Filed on March 29, 2016, is HEREBY GRANTED and the 5/9/16 Bankruptcy Order is HEREBY REVERSED. This Court DEFERS to the district court in Barnes v. Sea Hawaii Rafting, LLC, et al., CV 13-00002 ACK-RLP, regarding the effect of the reversal of the 5/9/16 Bankruptcy Order.
The Clerk's Office is DIRECTED to enter judgment and close the case on June 6, 2019 , unless a timely motion for reconsideration is filed.
IT IS SO ORDERED.